UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------x
CHRISTINE SMITH, on behalf of herself and
all others similarly situated,

                          Plaintiff,                    **MEMORANDUM & ORDER**
                                                         20-CV-4958 (PKC) (PK)

            - against -

NEW YORK STATE SECRETARY OF
STATE, Rossana Rosado, in her official
capacity, JOHN DOES #1 and #2,

                          Defendants.
--------------------------------------------------------x
PAMELA K. CHEN, United States District Judge:

    Plaintiff Christine Smith brings this action, on behalf of herself and all others similarly

situated, against defendants New York State Secretary of State Rossana Rosado ("Defendant

Rosado") and John Does #1 and #2 (the "John Doe Defendants") (collectively, "Defendants"), in

their official capacities, to challenge the policies, practices, and customs of the New York State

Department of State regarding the formation and dissolution of New York limited liability

companies.  Plaintiff alleges that these policies, practices, and customs violate her right to due

process and freedom of association under the United States and New York State Constitutions.

Pending before the Court is Defendant Rosado's motion to dismiss Plaintiff's first amended class

action complaint ("FAC") for lack of subject matter jurisdiction and failure to state a claim.

    For the reasons stated herein, Defendant Rosado's motion to dismiss is granted, Plaintiff's

request for leave to amend is denied, and this case is dismissed in its entirety.

1

## BACKGROUND

### I.    Procedural Background

Plaintiff commenced this action on October 15, 2020, against Defendant Rosado only.  (*See* Complaint ("Compl."), Dkt. 1.)  On December 31, 2020, Defendant Rosado requested a pre-motion conference in anticipation of filing a motion to dismiss pursuant to Federal Rules of Civil Procedure ("Rules") 12(b)(1) and 12(b)(6).  (*See* Defendant Rosado's Letter Motion for Pre-Motion Conference ("Def. PMC Letter"), Dkt. 10.)  Defendant Rosado's letter raised Eleventh Amendment immunity and Article III standing issues, among others.  (*Id.* at ECF[1] 2.)  On January 14, 2021, Plaintiff responded to Defendant Rosado's letter and argued, among other things, that the Court has subject matter jurisdiction and that, in any event, she intended "to amend the complaint, which [would] obviate issues raised by the Defendant."  (Plaintiff's Response to Rosado's Letter Motion for Pre-Motion Conference ("Pl. PMC Response"), Dkt. 12, at 1–2.)

On January 28, 2021, Plaintiff filed the FAC, which, among other things, added the John Doe Defendants in their official capacities.  (*See* FAC, Dkt. 13.)  On February 11, 2021, Defendant Rosado filed another pre-motion conference request, once again seeking permission to file a motion to dismiss pursuant to Rules 12(b)(1) and 12(b)(6).  (*See* Dkt. 14.)  By docket order dated February 20, 2021, the Court granted Defendant Rosado leave to file the motion to dismiss.  (2/20/2021 Docket Order.)  On July 23, 2021, the motion was fully briefed.  (*See* Defendant Rosado's Motion to Dismiss, Dkt. 22; Plaintiff's Memorandum in Opposition to Motion to Dismiss ("Pl. Opp."), Dkt. 23; Defendant Rosado's Reply in Support of Motion to Dismiss, Dkt. 24.)

---

[1] Citations to "ECF" refer to the pagination generated by the Court's CM/ECF docketing system and not the document's internal pagination.

2

## II.     Factual Allegations[2]

### A.     Plaintiff's Discovery of Her Identity Theft

On November 5, 2019, Plaintiff noticed an unauthorized charge on her credit card dated October 21, 2019.  (FAC, Dkt. 13, ¶ 14.)  "After investigating the purchase, Plaintiff learned that the unauthorized charge was made on incfile.com . . . as payment for the formation of a limited liability company."  (*Id.* ¶ 15.)  Plaintiff neither formed, nor authorized another person to form on her behalf, a limited liability company.  Similarly, Plaintiff did not use or authorize anyone else to use her credit card to pay for the formation fees on incfile.com.  (*Id.* ¶ 23.)

Plaintiff subsequently learned that the limited liability company was named 27 Linden Smith LLC (the "LLC") and that its address was registered as 27 Linden Place Apt. 2, Hempstead, New York (the "Hempstead Address").  (*Id.* ¶ 16.)  Plaintiff's name is listed in the LLC's articles of organization as the "[registered] agent of the limited liability company upon whom process against it may be served" at the Hempstead Address.[3]  (*Id.* ¶ 20.)  As a result, Plaintiff's name is also listed in the database of the New York Department of State's ("Department of State") Division of Corporations, State Records and Uniform Commercial Code ("Division of Corporations") as the only registered agent and contact person for service of process for the LLC, at the Hempstead Address.  (*Id.* ¶ 19.)

---

[2] The Court draws the facts from the FAC, which the Court accepts as true and construes in the light most favorable to Plaintiff, the nonmoving party.  *See Hayden v. Paterson*, 594 F.3d 150, 157 n.4 (2d Cir. 2010); *see also Robinson v. Gov. of Malaysia*, 269 F.3d 133, 140 (2d Cir. 2001) ("If the defendant challenges only the legal sufficiency of the plaintiff's jurisdictional allegations, the court must take all facts alleged in the complaint as true and draw all reasonable inferences in favor of plaintiff." (internal quotation marks and citations omitted)).

[3] The Hempstead Address does not belong to Plaintiff.  (FAC, Dkt. 13, ¶ 25.)

The articles of organization for the LLC were filed and "signed by 'Lovette Dobson, Organizer' and provide a Texas Address for 'Lovette Dobson.'" (*Id.* ¶¶ 21–22.) "Internet research suggests that 'Lovette Dobson' is the name or assumed name of a person associated with one or more companies, including but not limited to 'Incfile.com LLC' and 'QuickCorp' that handle registrations and incorporations for a fee." (*Id.* ¶ 24.) "Plaintiff has no connection to" the LLC or Lovette Dobson, "and has no idea who 'Lovette Dobson' is or whether this person is real or fictional." (*Id.* ¶ 25.)

### B.    Plaintiff's Actions to Address the Identity Theft

Upon discovering that someone had stolen her name and formed the LLC, Plaintiff contacted the Department of State by email and phone on November 6 and 7, 2019. (*Id.* ¶¶ 26, 31.) In the email, Plaintiff "informed the [Department of State] that her identity was stolen and an llc [sic] made in [her] name" and "requested that the [LLC] be dissolved so further damage is not done to [her] credit." (*Id.* (internal quotation marks omitted).) Plaintiff also requested that the LLC be "placed inactive as it is fraudulent and started with [a] stolen credit and stolen identity." (*Id.* ¶ 27.) On November 14, 2019, the Department of State sent two emails to Plaintiff. In the first email, the Department of State advised Plaintiff that it "has no authority to administratively dissolve the [LLC] or to place the [LLC] as inactive." (*Id.* ¶ 28.) The second email, sent one minute later, stated: "If you believe that the articles of organization were fraudulently filed, please contact your District Attorney's office." (*Id.* ¶ 29.) "On November 21, 2019, Plaintiff received a letter from John J. Whalen, the Director of the [Division of Corporations], which stated that the [Department of State] has no statutory authority to administratively inactivate or dissolve a limited liability company and suggested that Plaintiff discuss the matter with the office of the District Attorney." (*Id.* ¶ 30.)

4

Plaintiff also called the Division of Corporations on November 6, 2019, and spoke to an employee named Heather, who advised Plaintiff "that there was nothing [the Division of Corporations] could do to dissolve the [LLC] and that [Plaintiff] should contact the New York State Attorney General's office."   (*Id.* ¶¶ 31–32.)   "On November 7, 2019, Plaintiff again contacted" the Division of Corporations and "was told by an employee" named Sarah "that there was nothing [the Division of Corporations] could do to dissolve the company." (*Id.* ¶¶ 33–34.)

Subsequently, "Plaintiff called the Manhattan District Attorney's Cybercrime Unit" and was told that "the unit [does] not handle such cases and that Plaintiff should file a police report." (*Id.* ¶¶ 35–36.)  Plaintiff filed a police report for identity theft on November 9, 2019.  (*Id.* ¶ 44.) Plaintiff then contacted the Internal Revenue Service, which "found that Plaintiff did not have a relationship with the EIN[4] related to the [LLC] and accordingly removed all references to Plaintiff's name and social security number in association with this EIN." (*Id.* ¶¶ 42–43.)  Finally, Plaintiff closed all of her Bank of America bank accounts between November 5–10, 2019.[5]  (*Id.* ¶¶ 37–38.)

---

[4] "Employer Identification Numbers" ("EINs") "are issued for the purpose of tax administration . . . ."  Internal Revenue Service, *Apply for an Employer Identification Number (EIN) Online*, https://www.irs.gov/businesses/small-businesses-self-employed/apply-for-an-employer-identification-number-ein-online (last visited Mar. 29, 2022).

[5] On November 11, 2019, Plaintiff learned that someone attempted to open a business card with Bank of America in her name, which was unsuccessful.  (*Id.* ¶¶ 39–40.)  "On November 12, 2019, Plaintiff received an email from Bank of America with the subject, 'Welcome to Online and Mobile banking' despite the fact that Plaintiff had not opened a banking account nor had authorized anyone else to do so on her behalf."  (*Id.* ¶ 41.) The FAC does not explain whether Plaintiff contacted Bank of America to inquire about the email and to determine if a new account had, in fact, been opened in her name by someone else.

To date, the LLC is still listed on the Division of Corporations' database and Plaintiff's name is listed as the LLC's registered agent and process recipient at the Hempstead Address.  (*Id.* ¶ 46.)

### III.    Causes of Action and Requested Relief

Plaintiff asserts four causes of action.  The first and third causes of action allege violations of the United States Constitution's Fourteenth Amendment due process and First Amendment freedom of association rights, respectively.  (*Id.* ¶¶ 66–71; 78–83.)  The second and fourth causes of action allege corresponding New York State Constitution due process and freedom of association violations.  (*Id.* ¶¶ 72–77; 84–89.)

Defendant Rosado is being sued in her official capacity as the head of the Department of State.  With respect to the unnamed defendants, Plaintiff alleges that: (1) "Defendant John Doe #1 is a New York State officer responsible for and vested with authority to review incorporation applications for legal sufficiency, including for whether such filings contain fraudulent information" and (2) "Defendant John Doe #2 is a New York State officer responsible for and vested with authority to dissolve fraudulently founded New York State corporations."[6] (*Id.* ¶¶ 12–13.)

Plaintiff seeks damages against Defendants in their official capacities and "[a] declaratory judgment that Defendants' policies, practices, and customs violate the First and Fourteenth Amendments of the United States Constitution and Article One, Sections Six, Eight, and Nine of the New York State Constitution."  (*Id.* at 15.)  Plaintiff also seeks "[a]n injunction requiring Defendants to provide Plaintiff and the [putative class] with a legal mechanism that affords a hearing and constitutionally adequate process by which to challenge the legality of the formation

---

[6] The John Doe Defendants have not been named or served.

6

of fraudulent companies created as the result of identity theft, to contest the continued operation of such companies, to dissolve such companies and to disassociate themselves from such companies." (*Id.*)  Plaintiff further seeks an award of attorneys' fees, costs, and expenses. (*Id.* at 16.)

## STANDARD OF REVIEW[7]

A Rule 12(b)(1) motion challenging subject matter jurisdiction "may challenge either the legal or factual sufficiency of the plaintiff's assertion of jurisdiction, or both." *Robinson v. Gov. of Malaysia*, 269 F.3d 133, 140 (2d Cir. 2001).  "When the Rule 12(b)(1) motion is facial, *i.e.*, based solely on the allegations of the complaint or the complaint and exhibits attached to it . . . , the plaintiff has no evidentiary burden." *Carter v. HealthPort Tech., LLC*, 822 F.3d 47, 56 (2d Cir. 2016) (citing *Amidax Trading Group v. S.W.I.F.T. SCRL*, 671 F.3d 140, 145 (2d Cir. 2011)). If the defendant places a factual dispute relating to a jurisdictional question before the court, "a district court . . . may refer to [that] evidence." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000).  "However, the plaintiffs are entitled to rely on the allegations in the [complaint] if the evidence proffered by the defendant is immaterial because it does not contradict plausible allegations that are themselves sufficient to show" subject matter jurisdiction. *Carter*, 822 F.3d at 57.  "If the extrinsic evidence presented by the defendant is material and controverted, the district court will need to make findings of fact in aid of its decision as to" jurisdiction. *Id.*

---

[7] Because the Court finds that it lacks jurisdiction over this matter, it does not reach Defendant Rosado's Rule 12(b)(6) arguments or discuss that standard. *See Rhulen Agency, Inc. v. Alabama Ins. Guar. Ass'n*, 896 F.2d 674, 678 (2d Cir. 1990) ("Where, as here, the defendant moves for dismissal under Rule 12(b)(1), . . . as well as on other grounds, the court should consider the Rule 12(b)(1) challenge first since if it must dismiss the complaint for lack of subject matter jurisdiction, the accompanying defenses and objections become moot and do not need to be determined." (internal quotation marks omitted)).

Here, at first glance, Defendant Rosado appears to make a fact-based Rule 12(b)(1) motion. Defendant's motion attaches the declaration of Leo Gagion, which includes a number of exhibits.[8] However, with two limited exceptions,[9] Defendant Rosado's opening brief does not rely on any of the exhibits and focuses solely on the allegations in the FAC. Particularly, and as relevant to the Court's analysis here, Defendant Rosado's arguments regarding Eleventh Amendment immunity, and the Court's consideration of the same, rely entirely on the FAC and not on any evidence proffered through Gagion's declaration. Accordingly, the Court does not consider the extrinsic evidence presented by Defendant Rosado in deciding subject matter jurisdiction.

## DISCUSSION

### I.   New York Limited Liability Company Law

Section 203 of New York Limited Liability Company Law ("NYLLCL") "provides three specific requirements to form an LLC: (1) preparation of the articles of organization; (2) execution of the articles of organization; and (3) the filing of the articles of organization with the State." *In re Hausman*, 921 N.E.2d 191, 193 (N.Y. 2009); NYLLCL § 203. Section 209 of NYLLCL requires that the articles of organization be delivered to the Department of State and a filing fee be

---

[8] The exhibits include: (1) the FAC; (2) the letter from John J. Whalen, Director of the Division of Corporations, to Plaintiff; (3) the Articles of Incorporation of 27 Linden Smith LLC; (4) two publications by the New York State Department of State's Division of Consumer Protection; and (5) a transcript and final orders from a number of state court decisions. (*See* Declaration of Leo Gagion ("Gagion Decl."), Dkt. 22-1, at 1–3.)

[9] In her opening brief, Defendant Rosado refers to two Department of State Division of Consumer Protection publications regarding identity theft to argue that Plaintiff is not under "impending threat" if Plaintiff performed the actions described in the publications. (*See* Defendant Rosado's Memorandum of Law in Support of Motion to Dismiss, Dkt. 22-12, at 12 (citing Gagion Decl., Dkts. 22-5 (Exhibit D), 22-6 (Exhibit G)).) This evidence, which merely describes what a victim of identity theft can do to protect herself, is immaterial and does not contradict the allegations in the FAC that Plaintiff took certain actions in an attempt to remedy the identity theft. Moreover, the Court does not reach the question of whether Plaintiff has pleaded Article III standing. Thus, the Court need not resolve this factual issue.

paid.  *See* NYLLCL § 209 ("If the instrument that is delivered to the [D]epartment of [S]tate for filing complies as to form with the requirements of law and the filing fee . . . , the instrument shall be filed and indexed by the department of state.").  The Department of State is prohibited from reviewing the articles of organization "for legal sufficiency; its review [is expressly] limited to determining that the form has been completed."  *Id.*

Under NYLLCL section 701(a), a limited liability company can be dissolved in various ways, none of which include any action taken by the Department of State.  *See id.* § 701(a) (stating that dissolution can be achieved by: (1) "the latest date on which the limited liability company is to dissolve, if any, provided in the articles of organization, or the time specified in the operating agreement"; (2) "the happening of events specified in the operating agreement"; (3) "the vote or written consent of at least a majority in interest of the members"; (4) "at any time there are no members"; or (5) "the entry of a decree of judicial dissolution").  Once the limited liability company is dissolved pursuant to one of the methods listed under NYLLCL section 701, the executed articles of dissolution must be filed with the Department of State.  *See id.* § 705.  "The cancellation of the articles of organization is effective at the time of filing of the articles of dissolution."  *Id.* § 705(b).

## II.   The Eleventh Amendment Bars Plaintiff's Claims

### A.   Legal Standard

The Eleventh Amendment provides immunity to states in suits brought against them in federal courts, absent the states' explicit consent or unequivocal Congressional abrogation of immunity.  *Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 99 (1984); *CSX Transp., Inc. v. N.Y. State Off. of Real Prop. Servs.*, 306 F.3d 87, 94–95 (2d Cir. 2002).  "State immunity extends to state agencies and to state officers who act on behalf of the state. Thus, when the state is the real party in interest, the Eleventh Amendment generally bars federal court

jurisdiction over an action against a state official acting in his or her official capacity." *Burnette v. Carothers*, 192 F.3d 52, 57 (2d Cir. 1999) (citation omitted); *see also Pennhurst*, 465 U.S. at 101–02 (1984) ("The Eleventh Amendment bars a suit against state officials when the state is the real, substantial party in interest. . . . And, as when the State itself is named as the defendant, a suit against state officials that is in fact a suit against a State is barred regardless of whether it seeks damages or injunctive relief." (internal quotation marks omitted)).  The "Eleventh Amendment immunity is an important aspect of our federal system of government in that it assures that each state is a sovereign entity in our federal system and that it is inherent in the nature of sovereignty not to be amenable to suit by any individual litigant without the sovereign's consent." *CSX Transp.*, 306 F.3d at 94–95 (citing *Seminole Tribe v. Florida*, 517 U.S. 44, 54 (1996)).

"Even so, sovereign immunity is not absolute." *In re Dairy Mart Convenience Stores, Inc.*, 411 F.3d 367, 371 (2d Cir. 2005).  In *Ex Parte Young*, the Supreme Court recognized an exception to state sovereign immunity: a party may bring claims based on federal law violations for prospective injunctive or declaratory relief against state officials.  209 U.S. 123, 155–56 (1908); *see also Cecos Intern., Inc. v. Jorling*, 706 F. Supp. 1006, 1024 (N.D.N.Y. 1989) ("[I]t has long been established that the eleventh amendment does not forbid federal courts from granting injunctive relief against a state official acting contrary to the United States Constitution."); *Western Mohegan Tribe and Nation v. Orange County*, 395 F.3d 18, 21 (2d Cir. 2004) (*per curiam*) ("*Ex parte Young* is a limited exception to the general principle of sovereign immunity. It allows a suit for injunctive or declaratory relief challenging the constitutionality of a state official's actions in enforcing state law." (brackets and internal quotation marks omitted)); *see also Chinn v. Univ. of New York Sch. Of Law at Queens College*, 963 F.Supp. 218, 225 (E.D.N.Y. 1997) ("To avoid a partial 'end-run' around Eleventh Amendment immunity, any remedy for past violations of federal

law, including declaratory judgment, is barred." (quoting *Green v. Mansour*, 474 U.S. 64, 72–73 (1985))).  Notably, the *Ex Parte Young* exception does not apply where a party seeks damages against state officials sued in their official capacity.  *Pennhurst*, 465 U.S. at 101–02 (1984); *Edelman v. Jordan*, 415 U.S. 651, 667–68 (1974).  Similarly, *Ex Parte Young* does not apply to the Eleventh Amendment's bar on "all suits against states in federal court based on state law, regardless of the relief sought."  *Siani v. State Univ. of New York at Farmingdale*, 7 F. Supp. 3d. 304, 316 (E.D.N.Y. 2014); *see also Shibeshi v. City Univ. of N.Y.*, 531 Fed. Appx. 135, 135–36 (2d Cir. 2013) (summary order) (citing *Pennhurst*, 465 U.S. at 106 (1984)).

**B.      Plaintiff's Claims**

Plaintiff seeks, on behalf of herself and others similarly situated, damages, injunctive relief, and a declaratory judgment for alleged state and federal law violations by Defendants.  Defendant Rosado argues that the Court lacks subject matter jurisdiction because Plaintiff's claims are barred by the Eleventh Amendment.  The Court agrees, and discusses each of Plaintiff's claims for relief and damages separately below.[10]

1.      Injunctive and Declaratory Relief

As an initial matter, the Court dismisses Plaintiff's *state* law claims for injunctive and declaratory relief as barred under the Eleventh Amendment.  *Shibeshi*, 531 Fed. Appx. 135, 135–36 (citation omitted); *Pennhurst*, 465 U.S. at 106 (holding that the *Ex Parte Young* exception to Eleventh Amendment immunity is "inapplicable in a suit against state officials on the basis of state law").  Plaintiff's argument to the contrary, relying on *Henrietta D. v. Giuliani*, 81 F. Supp. 2d 425, 431 (E.D.N.Y. 2000), is unavailing.  Plaintiff argues that the "inclusion of state law claims

---

[10] The Court notes that even if Plaintiff's claims were not barred by the Eleventh Amendment, the Court could not declare unspecified "policies, practices, and customs" unconstitutional.

does not conflict with the Eleventh Amendment" because Plaintiff may "rely upon state law and evidence of defendants' liability under it to prove violations of similar federal law." (Pl. Opp., Dkt. 23, at 8–9.)  This is an erroneous and unsupported expansion of the narrow principle that while plaintiffs cannot "seek redress under state law," they may "satisfy[] their burden of proof on the elements of their federal law claims using definitions, obligations, and responsibilities found in state law." *Henrietta D.*, 81 F. Supp. at 431.  In fact, in *Henrietta D.*, the court dismissed the plaintiff's state law claims before finding that the plaintiffs would be allowed to use state law to prove violations of federal law. *Id.* at 430–31.  Thus, Plaintiff's opposition to the dismissal of her state law claims, grounded on *Henrietta D.*, is at best incorrect, if not frivolous.[11]

The FAC also seeks injunctive and declaratory relief against Defendants for alleged ongoing violations of the federal constitutional Fourteenth Amendment right to due process and the First Amendment right to freedom of association.  (FAC, Dkt. 13, ¶¶ 66–71, 78–83; *see also id.* at 15.)  The parties dispute whether Plaintiff's claims for injunctive relief are barred by the Eleventh Amendment.  "In determining whether the doctrine of *Ex Parte Young* avoids an Eleventh Amendment bar to suit, a court need only conduct a straightforward inquiry into whether the complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." *Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002) (brackets

---

[11] Similarly, the Second Circuit's decision in *Mont v. Heintz*, 849 F.2d 704, 710 (2d Cir. 1988), does not save Plaintiff's state law claim for injunctive and declaratory relief.  There, the Circuit held that "ascertaining state law is an everyday function of the federal court" and once state law is ascertained, the determination that it violates federal law "is sufficient to withstand an eleventh amendment challenge." *Id.* (internal quotation marks omitted); *see also id.* ("That [the state defendant] might also violate state law by failing to apply it is simply not controlling on the issue whether the eleventh amendment bars this suit. [*Pennhurst*] only proscribes federal courts from requiring states to conform their conduct to state law *qua* state law." (internal quotation marks omitted).  Here, any argument that Plaintiff should be allowed to use her allegations of state law violations to support her federal claims is moot because, as discussed below, Plaintiff's federal claims are also being dismissed as barred by the Eleventh Amendment.

and internal quotation marks omitted).  However, "[i]n making an officer of the state a party defendant in a suit to enjoin the enforcement of an act alleged to be unconstitutional, it is plain that such officer must have some connection with the enforcement of the act, or else it is merely making him a party as a representative of the state, and thereby attempting to make the state a party." *Ex Parte Young*, 209 U.S. at 157; *accord Calzone v. Hawley*, 866 F.3d 866, 869 (8th Cir. 2017) ("Because the defendants are state officials, [plaintiff] also must show that the action is not barred by state sovereign immunity arising from the Eleventh Amendment. A suit for injunctive or declaratory relief avoids this immunity if the official has some connection to the enforcement of the challenged laws.").

Indeed, the narrow exception carved out by the Supreme Court in *Ex Parte Young* requires that individual state actors have "both the power and the duty" under state law to enforce the state statute that is being challenged as unconstitutional.  *CSX Transp.*, 306 F.3d at 99 ("Accordingly, *Ex Parte Young* allows for jurisdiction over the Individual Defendants inasmuch as it is in the performance of their duties that there may be an ongoing violation of federal law. In so holding, we note that such a finding 'reflects a proper understanding of *Ex Parte Young*'s role in our federal system and respect for state courts instead of a reflexive reliance on an obvious fiction.'" (quoting *Idaho v. Coeur d'Alene Tribe*, 521 U.S. 261, 269 (1997) (brackets and internal quotation marks omitted))); *see also Marshall v. Switzer*, 900 F.Supp. 604, 615 (N.D.N.Y. 1995) ("Actions involving claims for prospective declaratory or injunctive relief are permissible provided the official against whom the action is brought has a direct connection to, or responsibility for, the alleged illegal action.").  Anything less would disrupt the balance between "the doctrine of sovereign immunity" and "the need to prevent violations of federal law."  *Dairy Mart*, 411 F.3d at 371–72 (quoting *Coeur d'Alene Tribe*, 521 U.S. at 269).  Thus, a state actor must have, by the law

of the state, a duty and authority to provide the requested relief.  *Siani*, 7 F. Supp. 3d. at 317 (citations omitted); *see also Chrysafis v. James*, 534 F. Supp. 3d 272, 287–88 (E.D.N.Y. 2021) (collecting cases).  This duty and authority "may be found either in the challenged statute itself or the general laws of the state."  *HealthNow N.Y., Inc. v. New York*, 739 F. Supp. 2d 286, 294 (W.D.N.Y. 2010).  However, "general authority to enforce the laws of the state is not sufficient to name a state officer as a defendant."  *Id.* (internal quotation marks omitted).

Applying these principles here, the Court finds that Plaintiff's claims for injunctive relief and declaratory judgment against Defendant Rosado must be dismissed.  Although Plaintiff names Defendant Rosado in the FAC, Plaintiff appears to concede that her claims against Rosado are barred by the Eleventh Amendment.  Plaintiff's opposition to Defendants' motion to dismiss is devoid of any argument that Defendant Rosado has the authority and duty to enforce the statutory scheme of limited liability company formations and dissolutions under New York law.  (Pl. Opp., Dkt. 23, at 8 (discussing the John Doe Defendants' authority only).)  Similarly, the FAC does not identify any general state laws that connect Defendant Rosado to the alleged violations here and nothing in NYLLCL itself charges Defendant Rosado with overseeing the formation and/or dissolution of limited liability companies.  *See Ex Parte Young*, 209 U.S. at 157 (holding that whether a state officer has "some connection with the enforcement of the act" "is the important and material fact," and that such connection can arise "out of the general law, or [can be] specially created by the act itself").  Accordingly, Plaintiff's claims against Defendant Rosado are dismissed as barred by the Eleventh Amendment.  *See Chrysafis*, 534 F. Supp. 3d at 290 ("Nothing in Part A of [the New York COVID-19 Emergency Eviction and Foreclosure Prevention Act of 2020] or the general laws of New York charges the Attorney General with a particular duty to enforce the parts of the statute challenged herein."); *see also HealthNow*, 739 F. Supp. 2d at 297 ("If a federal case

could be made for the purpose of testing the constitutionality of a state statute merely by naming any state official," "the limited exception of *Ex parte Young* would be stretched far beyond its intended purpose.").

Plaintiff's claims against Defendants John Doe #1 and John Doe #2 fare no better.  Plaintiff argues that "the John Doe Defendants are, by definition, state officers vested with authority to either with [sic] review incorporation applications for legal sufficiency or to dissolve fraudulently founded New York State corporations."  (Pl. Opp., Dkt. 23, at 8.)  Plaintiff neither explains where the John Doe Defendants' purported authority stems from, nor cites any statute to support this conclusion.  Plaintiff's description of Defendant John Doe #1 in the FAC as "a New York State officer responsible for and vested with authority to review incorporation applications for legal sufficiency" (FAC, Dkt. 13, ¶ 12) simply has no legal or factual basis in the FAC or NYLLCL. Indeed, as discussed, NYLLCL expressly *prohibits* the Department of State from reviewing limited liability company filings "for legal sufficiency."  NYLLCL § 209.  Similarly, there is no factual or legal basis for the FAC's conclusory allegation that "Defendant John Doe #2 is a New York State officer responsible for and vested with authority to dissolve fraudulently founded New York State corporations."  (*Id.* ¶ 13.)  Under NYLLCL section 701(a), the Department of State's only role with respect to the dissolution of a limited liability company is to receive the executed articles of dissolution.  *See* NYLLCL § 705(b) ("The cancellation of the articles of organization is effective at the time of filing of the articles of dissolution.").  These seemingly mythical John Doe Defendants described in the FAC clearly are not Department of State officers, and Plaintiff cannot otherwise will them into existence simply by claiming that they exist.

Ultimately, Plaintiff's claims against the John Doe Defendants must be dismissed because, notwithstanding Plaintiff's conclusory descriptions of them, they lack the power and duty to grant

the requested relief.  *See Siani*, 7 F. Supp. 3d. at 317 (a state actor must have, under the *Ex Parte Young* "exception to sovereign immunity," "authority to provide the requested relief").  Indeed, Plaintiff utterly fails to identify any state actor that has these powers or duties.  Thus, the John Doe Defendants, like Defendant Rosado, are entitled to immunity under the Eleventh Amendment. *CSX Transp.*, 306 F.3d at 99 (*Ex Parte Young* exception to Eleventh Amendment immunity applies to state officials only "inasmuch as it is in the performance of their duties that there may be an ongoing violation of federal law").  Furthermore, even if the FAC could be construed as alleging that NYLLCL itself is unconstitutional because it fails to provide a mechanism for reviewing LLC formations for legal sufficiency or dissolving fraudulently formed corporations—which the Court cannot in fact plausibly infer—the John Doe Defendants would still not have the power and authority to provide the requested relief because under NYLLCL they have no power or role in carrying out either of these functions.  *Cf. id.*, 306 F.3d at 98–99 (rejecting individual defendants' claims for Eleventh Amendment immunity because, where the state defendant "has the authority, among other things, to 'monitor the quality of local assessment practices by individual assessing units,' remove assessors, impose penalties upon assessors, and order assessors to comply with its directives," the individual defendants had "both the power and the duty under New York law to control assessment of railroad taxes for the local districts").

    2.    Damages

    Plaintiff's claim for damages, brought against Defendants in their official capacities (*see* FAC, Dkt. 13, ¶¶ 11–13), is also barred under the Eleventh Amendment.  *See Kentucky v. Graham*, 473 U.S. 159, 169 (1985) ("[A]bsent waiver by the State or valid congressional override, the Eleventh Amendment bars a damages action against a State in federal court. This bar remains in effect when state officials are sued for damages in their official capacity." (citations and footnote omitted)).  Plaintiff neither asserts that New York has waived its sovereign immunity, nor that

16

Congress has abrogated it.  In fact, in an apparent acknowledgement that the Court must dismiss the claim for damages, Plaintiff seeks leave to amend the FAC to name Defendants in their individual capacities.  (Pl. Opp., Dkt. 23, at 9.)

Accordingly, Plaintiff's damages claim is dismissed.  Furthermore, as discussed below, the Court denies Plaintiff's request to amend to name Defendants in their individual capacities.

## III.   Plaintiff's Request to Amend the Complaint Is Denied as Futile

Plaintiff seeks to amend her complaint once more to name Defendants in their individual capacities, arguing that this will "transform the viability of the claim for damages."  (*Id.*) Plaintiff's request for leave to amend is denied as futile.

Under Rule 15(a), a party may seek to amend its pleadings by leave of the court, which leave shall be freely given "when justice so requires."  Fed. R. Civ. P. 15(a).  "[I]t is within the sound discretion of the district court to grant or deny leave to amend."  *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007).  Leave to amend should be "freely given" absent undue delay, bad faith, futility, or prejudice to the opposing party.  *See e.g.*, *Foman v. Davis*, 371 U.S. 178, 182 (1962); *Mackensworth v. S.S. Am. Merch.*, 28 F.3d 246, 251 (2d Cir. 1994); *John Hancock Life Ins. Co. v. Amerford Int'l Corp.*, 22 F.3d 458, 462 (2d Cir. 1994).  "An amendment to a pleading is futile if the proposed claim could not withstand a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6)."  *Lucente v. Int'l Bus. Machs. Corp.*, 310 F.3d 243, 258 (2d Cir. 2002).  Leave to amend therefore can be denied as futile if the amendment is "frivolous or facially insufficient."  *Weg v. Macchiarola*, 729 F. Supp. 328, 341 (S.D.N.Y. 1990).

Here, Plaintiff already filed an amended complaint while fully on notice of the Eleventh Amendment issues that Defendant Rosado intended to raise in her motion to dismiss.  (*See* Def. PMC Letter, Dkt. 10; Pl. PMC Response, Dkt. 12, at 1–2.)  Plaintiff's failure to include, in the

FAC, allegations against Defendants in their individual capacities is inexplicable and indefensible, and strongly suggests that Plaintiff cannot do so.  Moreover, Plaintiff does not attach an amended complaint to her request for leave, and does not discuss *any* specific amendments to the complaint beyond naming Defendants in their individual capacities.  That is not sufficient.  To hold Defendants liable in their individual capacities, *i.e.*, personally liable for the alleged violations of her constitutional rights, Plaintiff must allege their personal involvement.  *See Graham*, 473 U.S. at 165 ("Personal-capacity suits seek to impose personal liability upon a government official for actions he takes under color of state law. . . . [A]n award of damages against an official in his personal capacity can be executed only against the official's personal assets . . . ."); *see also Grullon v. City of New Haven*, 720 F.3d 133, 138 (2d Cir. 2013) ("It is well settled that, in order to establish a defendant's individual liability in a suit brought under § 1983, a plaintiff must show . . . the defendant's personal involvement in the alleged constitutional deprivation.").  Plaintiff's request to amend does not allege anything regarding Defendants' personal involvement with respect to her claims.

Accordingly, the Court denies Plaintiff's request for leave to amend because the amendment, requested without any discussion of Defendants' personal involvement in the alleged denial of Plaintiff's constitutional rights, is facially insufficient and therefore futile.[12]  *See Jackson*

---

[12] The amendment likely would also be futile due to qualified immunity.  *See Farid v. Smith*, 850 F.2d 917, 923 (2d Cir. 1988) ("[I]in most instances an official who complies with an unconstitutional state law will be protected from personal liability by an applicable personal defense, such as absolute or qualified immunity or lack of personal involvement. For example, the defense of qualified immunity may shield a state official who acts under the authority of an unconstitutional state law; in most instances, compliance with state law is unlikely to violate clearly established federal law, since most state laws are not patently unconstitutional."); *see also Nolan v. Cuomo*, No. 11-CV-5827 (DRH) (AKT), 2013 WL 168674, at *10 (E.D.N.Y. Jan. 16, 2013) ("As for plaintiff's damages claims against [former New York Governor Andrew Cuomo] in his individual capacity, the Second Circuit has recognized that although such claims are not precluded by the Eleventh Amendment, 'in most instances an official who complies with an

*v. County of Nassau*, No. 07-CV-245 (JFB) (AKT), 2009 WL 393640, at *3 (E.D.N.Y. Feb. 13, 2009) ("[I]t is clear from plaintiff's application for leave to amend that he has no additional factual allegations to assert against either Commissioner Mulvey or DA Rice, but rather simply wants to add them as named defendants in the caption . . . , even though he has no specific allegations against them."); *Amna v. New York State Dept. of Health*, No. 8-CV-2806 (CBA) (LB), 2009 WL 6497844, at *2 (E.D.N.Y. Sept. 3, 2009) ("To the extent plaintiff proposes to sue the new defendants in their individual or personal capacities, plaintiff fails to demonstrate that these defendants have deprived her of a right, privilege, or immunity guaranteed by the Constitution or Laws of the United States." (citing *Back v. Hastings on Hudson Union Free Sch. Dist.*, 365 F.3d 107, 122 (2d Cir. 2004))).

## CONCLUSION

For the reasons stated in this Memorandum and Order, Defendant Rosado's motion to dismiss is granted and Plaintiff's request for leave to file a second amended complaint is denied. Plaintiff's first amended complaint is thus dismissed, with prejudice and without leave to replead, pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure.  The Clerk of Court is respectfully requested to enter judgment accordingly and close this case.

SO ORDERED.

*/s/ Pamela K. Chen*
Pamela K. Chen
United States District Judge

Dated: March 31, 2022
        Brooklyn, New York

---

unconstitutional state law will be protected from personal liability by an applicable personal defense, such as absolute or qualified immunity or lack of personal involvement.'" (quoting *Farid*, 850 F.2d at 923)).